IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES MICHAEL PHILLIPS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 21-CV-0211-GKF-JFJ |
| | ) |
| GENTNER DRUMMOND, Attorney General of the State of Oklahoma,[1] | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

Petitioner James Michael Phillips, a self-represented prisoner, seeks federal habeas relief, under 28 U.S.C. § 2254, claiming the criminal judgment entered against him in Tulsa County District Court Case No. CF-2015-4655 was obtained in violation of his federal right to due process because the State of Oklahoma "introduced and subsequently used [his] post-*Miranda*[2] custodial silence at trial." Dkt. 1, at 9. Having considered the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Dkt. 1), the Response in Opposition to the Petition (Dkt. 5), the Reply to the Response to the Petition (Dkt. 12), the record of state court proceedings (Dkts. 5, 6, 7), and applicable law, the Court finds and concludes that the Petition shall be denied.

---

[1] Phillips presently is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas, pursuant to a Kansas judgment and sentence. Dkts. 5-6, 15. Because he brings this action to challenge the validity of an Oklahoma criminal judgment and sentence to be served in the future and to be served consecutively to his current Kansas sentence, the Attorney General of the State of Oklahoma is the correct respondent. Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *see also Peyton v. Rowe*, 391 U.S. 54, 67 (1968) (discussing habeas petitions challenging future custody). The Court therefore substitutes the current Attorney General, Gentner Drummond, in place of former Attorney General John O'Connor, as party respondent. The Clerk of Court shall note this substitution on the record.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

I.   BACKGROUND

Phillips was convicted by a jury in 2019 of robbery with a firearm, in violation of Okla. Stat. tit. 21, § 801, and was sentenced to twenty-three years of imprisonment. Dkt. 1, at 1; Dkt. 5-4, at 1.[3] The Oklahoma Court of Criminal Appeals ("OCCA") described the facts surrounding the robbery as follows:

> [Petitioner] was convicted of robbing a cell-phone store in Tulsa. The assailant entered the store just before closing, brandished a firearm, threatened the only employee on duty, demanded cash and electronics, took personal information about the victim and her family, and tied up the victim before fleeing. A few weeks later, [Petitioner] was apprehended in an attempted armed robbery of a cell-phone store near Wichita, Kansas. The firearm and other paraphernalia in his possession at that time were very similar to the items used in the Tulsa robbery. [Petitioner] also had in his possession a cell phone containing video surveillance of the Tulsa store, taken a few days before and also hours before the Tulsa robbery. The victim of the Tulsa robbery positively identified [Petitioner] as the man who robbed her. At trial, [Petitioner] represented himself and testified on his own behalf. He admitted the Kansas robbery attempt, but claimed his cousin committed the Tulsa robbery.

Dkt. 5-4, at 3.[4]

Phillips was apprehended and arrested on August 11, 2015, following his attempted armed robbery of an AT&T store in Derby, Kansas. Dkt. 5-5, at 46-47. A local detective read Phillips his *Miranda* rights, which Phillips chose to waive, and interrogated Phillips regarding the Derby robbery. *Id.* at 55-56. The following day, a detective from Tulsa, Detective Ryden, drove to Derby to speak with Phillips regarding the Tulsa robbery that occurred three weeks prior. *Id.* at 77-78. At trial, Detective Ryden testified that he "explained the facts of the Tulsa case" to Phillips, "and [Phillips] declined to make a statement at that point." *Id.* at 78. The detective's testimony does not reveal whether Phillips received *Miranda* warnings during this encounter.

---

[3] The Court's citations refer to the CM/ECF header pagination.

[4] The Court presumes the OCCA's determinations of factual issues to be correct, absent clear and convincing evidence "rebutting the presumption of correctness." 28 U.S.C. § 2254(e)(1).

2

Phillips testified at trial that his cousin Antwan Brown committed the Tulsa robbery. The prosecution sought to impeach this testimony during cross-examination and closing argument by suggesting Phillips would have informed police of this information earlier, were it true. During cross-examination, the following colloquy occurred:

> Q. So when you found out that you were wrongfully accused, you went straight to the police officers and told you [sic], Look, I might have done this, but I didn't do that, you got to know this is the guy who committed the Tulsa robbery, right?
>
> A. No, sir, I didn't. I've never went to the police. I didn't ever give a statement.
>
> Q. Surely, an innocent man, you went to the media or anyone who would listen to you, right?
>
> A. I never went to the media, no, sir. Do you have something to show that?
>
> Q. But you're an innocent man, right, Mr. Phillips?
>
> A. Yes.
>
> Q. Isn't that what you're saying?
>
> A. I am innocent of this Tulsa case.
>
> Q. Detective Ryden drove all the way from Tulsa to Derby just to talk to you; isn't that correct?
>
> A. I'm not sure what his purpose was, but he did drive all the way up there. I believe he testified that he wanted to visit the scene and all the other stuff, so—but he did come up there to talk to me, yes, sir.
>
> Q. And you, the innocent man, you told him it was Antwan Brown, right?
>
> A. Of course I didn't. No, I did not. I invoked my right to remain silent.

Dkt. 5-5, at 106-07.

During closing arguments, the prosecution stated that Phillips "never said anything about Antwan until Monday of this week." *Id.* at 110. The prosecution further stated:

> Now, . . . I'd like to point out that every single opportunity he had to try to present evidence that he was innocent, he passed up until the week of trial. . . . [H]e throws

3

> some Antwan Brown out the week of trial, and he blames us for not investigating that.
>
> ….
>
> So after being contacted by Ms. Burks, [Detective Ryden] drives all the way up to Derby, Kansas, about a three-hour drive. And he wants to meet with Mr. Phillips and tell about his case, see if he can help him out, provide any leads. And, of course, at the time, Mr. Phillips said, Oh, Tulsa, no, no, no, that was Antwan; you need to look at Antwan. Of course he didn't say that. He said nothing.
>
> ….
>
> Do you remember when he said that he never told police about this Antwan Brown because he's not a snitch, he's not prosecution witness? Yet he waited this entire time, and to come up with this story, this never-before-told story the week of trial, and then when he could have presented evidence to say, hey, this Antwan Brown is an actual person, don't you think we look similar? Hey, members of the jury, this Antwan Brown really exists. We could have gotten confused. He didn't do that because he's the person. He's the one that did it and he knows it, and he's trying to spin this magical tale of some Antwan Brown character that, according to him, exists.

*Id.* at 112-15.

Phillips directly appealed his judgment and sentence to the OCCA, arguing, in part, that the prosecutor's use of post-*Miranda* silence for impeachment purposes violated his due process rights. Dkt. 5-1, at 12-17. The OCCA affirmed Phillips's judgment and sentence in a summary opinion on April 23, 2020. Dkt. 15-4. Phillips now seeks federal habeas relief on his claim.

II.     LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotation marks omitted). When a claim has been "adjudicated on the merits in State court proceedings," federal habeas relief may be granted under the AEDPA only if the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal

4

law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision." *Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alteration and internal quotation marks omitted). A state-court decision is "contrary to" clearly established federal law if the conclusion is "opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Id.* (alterations and internal quotation marks omitted). A state-court decision involves an "unreasonable application" of clearly established federal law if the "state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (alteration and internal quotation marks omitted). "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico*, 559 U.S. at 773 (citations and internal quotation marks omitted) (emphasis in original).

III. DISCUSSION

In his sole ground for federal habeas relief, Phillips argues that his due process rights were violated when the prosecution impeached him during cross-examination and closing arguments with his post-*Miranda* silence. Dkt. 1, at 9. In *Doyle v. Ohio*, 426 U.S. 610 (1976), the Supreme Court held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth

5

Amendment." *Doyle*, 426 U.S. at 619. This principle "rests on 'the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.'" *Wainwright v. Greenfield*, 474 U.S. 284, 291 (1986) (quoting *South Dakota v. Neville*, 459 U.S. 553, 565 (1983)). Because this "implicit assurance" is predicated on "the right-to-remain-silent component of *Miranda*," due process "does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest, or after arrest if no *Miranda* warnings are given." *Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993) (citations omitted) (explaining that "[s]uch silence is probative and does not rest on any implied assurance by law enforcement authorities that it will carry no penalty").

The OCCA adjudicated Phillips's claim on the merits on direct appeal. In denying the claim, the OCCA determined that the record did not support a finding that Phillips had received *Miranda* warnings when he refused to speak to Detective Ryden regarding the Tulsa robbery:

> In Proposition I, [Petitioner] claims the prosecutor improperly referred to his invocation of his right to silence when a Tulsa detective attempted to interview him about the Tulsa robbery after his Kansas arrest. Because [Petitioner] never objected to these references, review is for plain error. Plain errors are those errors which are obvious in the record, and which affect the substantial rights of the defendant—that is, the error affects the outcome of the proceeding. *Daniels v. State*, 2016 OK CR 2, ¶ 3, 369 P.3d 381, 383. Because the claim here implicates a constitutional right, if we find error, the burden shifts to the State to show the error was harmless beyond a reasonable doubt. *White v. State*, 2019 OK CR 2, ¶ 17 n.7, 437 P.3d 1061, 1068 n.7. There is no indication that [Petitioner's] refusal to speak to the Tulsa detective about the Tulsa robbery was prompted by *Miranda* warnings; the record is silent as to whether such warnings were even given before the attempted interview. Cross-examination about [Petitioner's] silence was therefore proper, where [Petitioner] chose to testify. *Fletcher v. Weir*, 455 U.S. 603, 607 (1982); *Royal v. State*, 1988 OK CR 203, ¶ 13, 761 P.2d 497, 500. There was no error here. Proposition I is denied.

Dkt. 5-4, at 3-4 (footnote omitted). The OCCA further noted:

> The closest anyone came to linking [Petitioner's] silence to his constitutional rights was a comment volunteered by [Petitioner] himself. When asked on cross-examination if he had told the Tulsa detective that Antwan Brown was the real

6

>culprit, he answered: "Of course I didn't.  No, I did not.  I invoked my right to remain silent."

*Id.* at 4 n.1.

Respondent contends that, "to the extent [Phillips] might be claiming that Detective Ryden informed him of his *Miranda* rights" on August 12, 2015, Phillips has failed to provide clear and convincing evidence overcoming the presumption of correctness afforded the OCCA's factual finding that "'the record is silent as to whether [*Miranda*] warnings were even given before the attempted interview.'"  Dkt. 5, at 21 (quoting Dkt. 5-4, at 4); *see* 28 U.S.C. § 2254(e)(1).  The Court agrees that Phillips has not met this burden.  To the contrary, Phillips appears to concede in his reply brief that he did not receive *Miranda* warnings during his encounter with Detective Ryden.  Dkt. 12, at 5-7 (arguing that Detective Ryden's failure to inform Phillips of his *Miranda* rights supports a due process claim).  Accordingly, Phillips has not shown that he received government assurances on August 12, 2015, that his silence would not be used against him.  *See Fletcher*, 455 U.S. at 607 ("In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand."); *Brecht*, 507 U.S. at 628.

Phillips, however, primarily bases his argument of a *Doyle* violation on the fact that he received *Miranda* warnings on August 11, 2015, when he was interrogated regarding the Derby robbery.  Dkt. 1, at 9; Dkt. 12, at 2-3.  Respondent argues that the August 11, 2015, *Miranda* warnings cannot support Phillips's due process claim because Phillips waived his rights and agreed to speak with the Derby detective.  Dkt. 5, at 20.  Indeed, because this interrogation did not concern the Tulsa robbery and Phillips expressly waived his right to remain silent, Phillips cannot successfully predicate his due process claim on the August 11, 2015, *Miranda* warnings without

7

showing (1) that *Doyle* applies where a defendant was silent after expressly waiving his *Miranda* rights and (2) that *Doyle* applies where a defendant received *Miranda* warnings in a separate interrogation relating to a separate crime.

Phillips fails to point to any clearly established law applying *Doyle* where a "suspect was silent after expressly waiving his *Miranda* rights." *Martinez v. Trani*, 750 F. App'x 759, 762 (10th Cir. 2018).[5] Similarly, Phillips has not offered, nor has the Court found, clearly established law applying *Doyle* where *Miranda* warnings were provided during an interrogation for a separate crime, and there is no indication that the *Doyle* court intended its holding to apply so broadly. *See Doyle*, 426 U.S. at 619 ("'[I]t does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak *about the facts of the case* at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony." (emphasis added) (quoting *United States v. Hale*, 422 U.S. 171, 182-83 (1975) (White, J., concurring))). Phillips, therefore, has not shown that federal habeas relief is merited under *Doyle*, based on the August 11, 2015, *Miranda* warnings.

For these reasons, the Court determines that the OCCA's adjudication of the claim was not contrary to, or an unreasonable application of, clearly established law, nor was it based on an unreasonable determination of the facts. 28 U.S.C § 2254(d). Further, even if Phillips had demonstrated a constitutional error, he cannot establish that, "in light of the record as a whole, the State's improper use for impeachment purposes of [his] post-*Miranda* silence 'had substantial and

---

[5] The Court cites unpublished decisions for their persuasive value. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 638 (internal citation omitted) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  At trial, the prosecutor's references to Phillips's failure to implicate his cousin earlier were infrequent, and the State's evidence of guilt was weighty.  *See id.* at 639.  The victim of the Tulsa robbery, Destiny Burks, testified that, over the course of "at least an hour," Phillips brandished a firearm, threatened her life, exacted personal information about both her and her family, demanded cash and electronics, and bound her wrists and ankles with zip ties before fleeing.  Dkt. 6-12, at 41-60.  Burks identified Phillips as the perpetrator on three occasions.  First, following the Kansas robbery, Burks's sister showed Burks a picture of Phillips, and Burks, without context, identified him as the individual who robbed her.  *Id.* at 61-62.  Burks identified Phillips a second time in a photographic lineup, and a third time at trial, testifying that she was "a hundred percent certain" Phillips was the perpetrator.  *Id.* at 60-63.

   Additionally, the jury heard testimony that Phillips was arrested with similar paraphernalia as that used in the Tulsa robbery.  Burks testified that Phillips carried a "black backpack with . . . gray bungee-type . . . strings," as well as scissors, wet wipes, zip ties, trash bags, duct tape, and a baggie for money.  *Id.* at 48, 55.  When Phillips was apprehended following the Kansas robbery, he similarly had in his possession zip ties, handcuffs, duct tape, scissors, disinfectant wipes, a gun, and a backpack that matched Burks's description.  *Id.* at 105, 107-08, 110.  He also had cell phones containing casing videos of the Tulsa store and a deleted "search history of Tulsa AT&T stores," "Tulsa AT&T store robberies," and "crime prevention tips."  *Id.* at 122-25.

   Finally, the Court notes that the prosecution's comments regarding Phillips's failure to report his exculpatory story to police were not the only means by which the prosecution impeached Phillips's testimony of his cousin's involvement.  The prosecution also highlighted that, if

9

Phillips's cousin had perpetrated the Tulsa robbery, Phillips would have taken the logical step of showing Burks a photograph of his cousin during cross-examination. Dkt. 6-13, at 129-30 ("So what better way than to show a photograph of someone who is the mistaken identity, the person that they identified mistakenly as you?"); Dkt. 5-5, at 115 ("[H]e could have presented evidence to say, hey, this Antwan Brown is an actual person, don't you think we look similar? Hey, members of the jury, this Antwan Brown really exists. We could have gotten confused. He didn't do that because he's the person.").

Considering the abundant evidence of guilt, the Court concludes that, even if a *Doyle* error occurred at Phillips's trial, it did not substantially influence the jury's verdict. *See Brecht*, 507 U.S. at 639.

IV.   CONCLUSION

Based on the foregoing, the Court denies Phillips's petition for a writ of habeas corpus (Dkt. 1). Under Rule 11(a) of the *Rules Governing Section 2254 Cases in the United States District Courts*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Court concludes that Phillips has not satisfied this standard and therefore declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED** that the Clerk of Court shall note on the record the substitution of Gentner Drummond, Attorney General of the State of Oklahoma, in place of John O'Connor as party respondent.

**IT IS FURTHER ORDERED** that (1) the Petition (Dkt. 1) is **denied**; (2) a certificate of appealability is **denied**; and (3) a separate judgment shall be entered in this matter.

**DATED** this 11th day of July, 2024.

_____
GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE